**UNITED STATES of America, Plaintiff,**

**v.**

**Gordon URLACHER, Defendant.**

**No. CR–90–200T, CR–91–190T.**

United States District Court,
W.D. New York.

Feb. 11, 1992.

See also 136 F.R.D. 550.

Bradley Tyler, U.S. Attys. Office, Rochester, N.Y., for plaintiff.

Lawrence J. Andolina, Harris Beach & Wilcox, Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

The defendant, Gordon Urlacher, is charged in two separate indictments with conspiring to violate Title 18, United States Code § 666(a)(1)(A), and also with substantive violations of that section. Defendant now moves to dismiss the second indictment, CR–91–190T, on the grounds that it is multiplicitous.

Multiplicity occurs when a single crime has been arbitrarily divided or separated into two or more separate counts or indictments. *United States v. Nakashian,* 820 F.2d 549 (2d Cir.), *cert. denied,* 484

U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987); *see also United States v. Castro*, 629 F.2d 456, 461 (7th Cir.1980). Multiplicitous indictments or counts are prohibited by the double jeopardy clause of the United States Constitution, which "assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Maldonado–Rivera*, 922 F.2d 934, 969 (2d Cir.1990) (citing *Nakashian*, 820 F.2d at 552).

Where, as here, the defendant is charged with multiple violations of one statute, the court must "identify the unit of prosecution of the offense charged" in order to determine whether the defendant's conduct "constitutes a single offense or several...." *United States v. Song*, 934 F.2d 105, 108 (7th Cir.1991). In identifying the correct "unit of prosecution," the court must first examine the statute itself. *Id.*

Here, the only difference between the substantive counts in the first indictment and those in the second indictment is the source of money the defendant allegedly embezzled or misapplied. For example, count three of the first indictment (CR–90–200T) charges that

> [i]n or about and between July 1, 1987 and June 30, 1988, the defendant, GORDON URLACHER, was an agent of the City of Rochester, that is the Chief of the Rochester Police Department, said City of Rochester having received in the one year period beginning July 1, 1987, *benefits in excess of $10,000 under a federal program* involving a grant, contract, subsidy, or other form of federal assistance; moreover, within the time period referenced, ... the defendant, GORDON URLACHER, ... did knowingly and intentionally embezzle, obtain by fraud and otherwise without authority convert and misapply cash monies in excess of $5,000, said cash monied having been in the care, custody and control of the Rochester Police Department, an agency of the City of Rochester; All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2. (emphasis mine).

Count two of the second indictment (CR–91–190T) is *identical* to count three of the first indictment except that it specifies that the "said cash monies" were "received from the Monroe County Probation Department and the Chase Lincoln First Bank...." In other words, the only difference between these two counts and, indeed, the other counts in the first and second indictments, is that the funds which the defendant allegedly embezzled came from different sources.

■ Accordingly, this court must look to the statute to determine whether it is "source-specific," that is, whether it permits the government to charge the defendant with a separate violation based upon the source of the funds he is alleged to have embezzled. I conclude that it does not. Title 18, United States Code, § 666(a)(1)(A) provides in pertinent part that

> whoever, ... being an agent of ... a local ... government, or any agency thereof—embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that— is valued at $5,000 or more, and is owned by, or is under the care, custody, or control of such ... government or agency,

shall violate the law. Section 666(b) also requires that, the local government or agency receive "in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b).

The statute is extremely broad—essentially "federalizing" the crime of embezzlement so long as a certain amount of federal funds have been given to the "local government." There is no requirement that the property actually embezzled be federal money or traceable to federal money. *Any* property, regardless of its source, which is embezzled from the local government or agency falls under the statute, so long as the property is under the care or control of

the government or agency concerned and so long as that entity receives more than $10,000 a year in federal benefits. *United States v. Webb,* 691 F.Supp. 1164, 1168 (N.D.Ill.1988).

■ Moreover, the government urges this court to accept an interpretation of this statute which would permit aggregation of the value of property stolen in multiple conversions each involving less than $5,000. Support for this interpretation of the statute is found in *Webb, supra.* In *Webb,* the court ruled that the government may consolidate or aggregate the value of property stolen in multiple conversions of less than $5,000 in order to reach section 666's minimum of $5,000, as long as the conversions were part of a single plan or scheme, the intent of which was to convert or steal more than $5,000. *Webb,* 691 F.Supp. at 1168.

This view of section 666 serves to strengthen this court's conclusion that charging a defendant with a separate violation for each source of money allegedly stolen impermissibly exposes the defendant to multiple punishments for the same offense. To permit the government to aggregate multiple conversions to reach the $5,000 minimum, and then to start over again in a separate and distinct count is illogical and certainly unfair. Thus, I hold that the "unit of prosecution" in this case is "$5,000 or more," from whatever source, in any one year period in which the government or agency at issue receives more than $10,000 in Federal aid. Accordingly, the substantive counts in the second indictment are multiplicitous.

■ With respect to the conspiracy count in each indictment, the court must look to the "totality of the circumstances" to determine whether the two conspiracies alleged are, in fact, one conspiracy. *United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985).[1]

■ There are a number of factors which the Second Circuit has identified "as relevant to the task of individuating conspiracies." *Korfant,* 771 F.2d at 662. They include:

(1) the criminal violations charged in each indictment;

(2) the overlap of participants;

(3) the overlap in time;

(4) similarity of the operation;

(5) existence of common overt acts;

(6) the geographic scope of conspiracies and where the overt acts occurred;

(7) whether the conspiracies had common objectives; and

(8) the degree of interdependence between the two conspiracies. *Id.*

Both indictments are congruent. The conspirators are identical in each alleged conspiracy, as are the objectives, geographic scope of the conspiracy and the location of the overt acts. Moreover, the second alleged conspiracy takes place entirely within the time period of the first conspiracy. After hearing all of the evidence put forth by the government, I am convinced that there was in reality, only one agreement, not two. Accordingly, I conclude that the conspiracy count in the second indictment, CR–91–190T, is also multiplicitous.

Of particular importance to this conclusion, is the fact that all the funds in both indictments were allegedly under the control of defendant Urlacher. The fact that the funds came from separate sources does not support the Government's position that separate conspiracies and substantive offenses resulted from the embezzlement of these funds. The government has demonstrated that all the funds allegedly embezzled, regardless of their source, were initially payable to the defendant, cashed pursuant to his authority, treated by him as one fund, and kept under his control in a safe in his office. The statute simply does not require that the funds come from a specific source, nor does it permit the government to charge the defendant with

---

1. I apply *Korfant* despite the Second Circuit's holding in *United States v. Calderone,* 917 F.2d 717, 721 (2d Cir.1990), because *Calderone* overruled *Korfant* only insofar as it "applies to double jeopardy claims arising in the context of *successive* prosecutions." The two conspiracy charges now before me are being prosecuted *simultaneously.*

separate crimes because he allegedly embezzled funds which came from different sources. The government need only allege that the City of Rochester received federal funds in any one year in excess of $10,000 and that the amount embezzled during that period equals or exceeds $5,000. It makes no difference what the source of the money was. Accordingly, both the conspiracy count and the substantive counts in the second indictment are multiplicitous.

■ However, the fact that the court finds indictments or counts to be multiplicitous does not mandate dismissal of the indictment. The principle danger of multiplicitous indictments is that the defendant will be given multiple sentences for the same offense. This can be remedied simply by ensuring that the defendant does not receive more than one sentence for one offense. *See United States v. Langford,* 946 F.2d 798, 805 (11th Cir.1991); *see also United States v. Reed,* 639 F.2d 896, 905 n. 6 (2d Cir.1981).

In this case, the danger of multiple sentences is extinguished by consolidating count one of the second indictment with count one of the first indictment, and by consolidating the substantive counts of the second indictment with the substantive counts in the first indictment. This will eliminate the risk of the defendant being given multiple sentences for a single offense, and yet permit the jury to consider all of the proof submitted by the government. In other words, the jury will determine whether the defendant is innocent or guilty of only *one* conspiracy count and five substantive counts, but will still be able to consider all of the relevant evidence of embezzlement or misapplication of funds, from whatever source those funds were derived.

In sum, the consolidated indictment filed by the Government in accordance with this Decision and Order shall be charged to the jury and it shall pass only on this indictment, CR–90–200T, as consolidated.

Appropriate curative instructions will be given to the jury, explaining why they now will only pass on one indictment rather than two, ensuring that neither party will be prejudiced.

ALL OF THE ABOVE IS SO ORDERED.